UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TOMAS ZAVALIDROGA and MARGARET
ZAVALIDROGA,

                              Plaintiffs,

                                                              6:14-CV-01273
v.                                                            (GTS/TWD)

ONEIDA COUNTY DEPT. OF ADULT
PROTECTIVE SERVICES, KRISTEN PALMER,
an Oneida County Social Services employee;
CAROLA SEIDER-ZAVALIDROGA, Individually;
JON ZAVALIDRIGA, Individually;
VICTOR ZAVALIDROGA, Individually,

                              Defendants.
_____

APPEARANCES:

TOMAS ZAVALIDROGA
Plaintiff *pro se*
PO General Delivery
Old Forge, New York 13420

MARGARET ZAVALIDROGA
Plaintiff *pro se*
NO ADDRESS PROVIDED


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER AND REPORT-RECOMMENDATION**

## I.      INTRODUCTION

        Plaintiffs Margaret Zavalidroga ("Margaret") and Tomas Zavalidroga ("Tomas"),

individually and as his mother Margaret's attorney-in-fact, have commenced this pro se civil

rights action alleging a conspiracy to violate their constitutional rights under 42 U.S.C. §§ 1981,

1983, and 1985. (Dkt. No. 1.) Named as Defendants are Oneida County Department of Adult Protective Services; Kristen Palmer, an employee of Oneida County Social Services; Carola Seider-Zavalidroga, Individually; Jon Zavalidroga, Individually; and Victor Zavalidroga, Individually. *Id.* According to the complaint, the action has been brought "to address a long-standing civil rights conspiracy involving the Defendants and to secure emergency injunctive relief relating to Margaret Zavalidroga's confinement and detention and Tomas Zavalidroga's durable power of attorney over her affairs." *Id.* at ¶ 1.

The Court granted Tomas's *in forma pauperis* application ("IFP Application") in an Order filed on January 1, 2015. (Dkt. No. 6 at 5.) Margaret's IFP Application was denied without prejudice on the grounds that it was signed solely by Tomas, and there was no indication that Margaret had any involvement in the IFP Application, or that Tomas had authority to act as Margaret's attorney-in-fact for that or any other purpose. *Id.* at 2.

In its Order, the Court directed that the case to be stayed for ninety days in order to give Margaret time to file an amended complaint signed by her and to appear pro se in the action; for counsel to be retained to represent her with regard to claims being pursued on her behalf; or for a motion for appointment of counsel to be filed by her. *Id.* at 5. The Order further provided that if Margaret did not appear *pro se* on her own behalf, appear by counsel, or move for the appointment of counsel on or before April 21, 2015, the Court would issue a Report-Recommendation: (1) recommending that the claims asserted on Margaret's behalf be dismissed without prejudice on the grounds that Tomas may not pursue those claims *pro se* on her behalf; and (2) doing an initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) of the claims being pursued by Tomas *pro se* on his own behalf. *Id.* at 5-6.

## II.     TOMAS'S POST-ORDER SUBMISSIONS

On March 20, 2015, Tomas filed a letter motion for an in-person hearing with the Court. (Dkt. No. 7.)  In the letter, Tomas maintained that Margaret was being held under duress by those in privy with Defendants and prevented from acting freely of her own accord.  *Id*.  Tomas requested the meeting to determine how Margaret was to proceed in the action.  *Id.*  By Text Order dated April 23, 2015, the Court denied Tomas's request for an in-person hearing.  (Dkt. No. 8.)

On April 13, 2015, Tomas filed a letter motion for an extension of time to refile the action pending the appointment of an attorney to represent both Plaintiffs or the appointment of an independent psychiatrist to ascertain Margaret's capacity to proceed in the action on her own accord.  (Dkt. No. 9.)  Tomas noted in his letter that subsequent to the commencement of the action, his power of attorney had been revoked, and Theresa Girouard, Esq. ("Girouard") had become Margaret's state court appointed guardian.  *Id*.  Tomas asked the Court to provide him with impartial means for both the Court and him to contact Margaret regarding this litigation.  *Id*.  Tomas also moved for the appointment of counsel to represent both Plaintiffs.  *Id*.  By Text Order dated April 16, 2015, the Court granted an extension of time to June 5, 2015, and denied Tomas's motion for appointment of counsel without prejudice.  (Dkt. No. 10.)

On May 18, 2015, Tomas filed a motion for a temporary restraining order and preliminary injunction restraining the state court from granting Girouard's order to show cause seeking transfer of property in Tomas's name to herself as Margaret's guardian.  (Dkt. No. 11.)  On the same date, Tomas filed a motion for appointment of counsel to represent him in this action.

(Dkt. No. 12.)  The Hon. Glenn T. Suddaby, Chief United States District Judge, denied Plaintiffs' motion for a temporary restraining order and preliminary injunction by Text Order of May 19, 2015, on the grounds that Plaintiffs (1) had not filed a certificate of service, nor shown in an affidavit that substantial prejudice would result from giving notice to Defendants; (2) had failed to sufficiently establish a likelihood of irreparable harm if a temporary restraining order was not issued; and (3) had failed to sufficiently establish either a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping in Plaintiffs' favor on the motion for a preliminary injunction.  (Dkt. No. 13.)  This Court denied Tomas's motion for appointment of counsel without prejudice in a May 19, 2015, Text Order.  (Dkt. No. 14.)

On May 28, 2015, Tomas filed another letter motion requesting an extension of time to complete the refiling of the action and submit motions for appointment of counsel.  (Dkt. No. 15.)  Tomas informed the Court that an order of protection had been issued in a related action preventing him from communicating directly with Margaret.  *Id*. at 1.  By Text Order dated June 1, 2015, the Court granted an extension to July 6, 2015, and continued the stay in the Court's January 21, 2015, Order.  (Dkt. No. 16.)

Tomas filed a letter motion for an additional extension on July 1, 2015.  (Dkt. No. 17.)  The Court granted an extension to August 31, 2015, and continued the stay in a July 2, 2015, Text Order.  (Dkt. No. 18.)  The Text Order provided that no further extensions would be granted.  *Id*.

Tomas nonetheless requested an additional extension of time by letter motion filed on August 21, 2015.  (Dkt. No. 19.)  Noting that in all probability, Margaret might not be aware of

the commencement of this action, Tomas also requested that the Court order Defendants to allow Margaret to be personally served with the papers filed in this action. *Id*. In addition, Tomas requested that the time be extended for service of the summons on Defendants. *Id*. In a Text Order dated August 25, 2015, the Court denied Tomas's request for a further extension regarding Margaret's claims; denied as moot the request to extend the time for service of the summons on Defendants on the grounds that no summonses had been issued; and indicated that the Court would issue a Report-Recommendation on the claims asserted on behalf of Margaret and undertake an initial review of the claims asserted on behalf of Tomas. (Dkt. No. 20.)

In response, Tomas filed another motion requesting appointment of counsel for both Plaintiffs on August 31, 2015. (Dkt. No. 21.)

## III. CLAIMS ASSERTED ON MARGARET'S BEHALF

The Court explained in its January 21, 2015, Order that Tomas cannot appear pro se on behalf of Margaret in this action, *see Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010), and that in order for her to proceed as a party plaintiff in the lawsuit, Margaret would have to appear pro se or by counsel. (Dkt. No. 6 at 3-4.) The Court has granted Tomas a number of extensions of time for Margaret to appear pro se or by counsel, and she has not done so, which is not surprising given Tomas's admission that Margaret, who now has a state court appointed guardian, may not even know about this lawsuit. (Dkt. No. 19.) Although Tomas has moved for the appointment of counsel for both Margaret and him, most recently on August 31, 2015 (Dkt. No. 21), he conceded that his power of attorney has been revoked, and a guardian had been appointed for Margaret, leaving him with no authority to move for appointment of counsel for Margaret. (Dkt. Nos. 7, 9.)

In light of the foregoing, the Court denies Tomas's August 31, 2015, motion to appoint counsel for Margaret and recommends that the District Court order that the claims asserted on Margaret's behalf be dismissed without prejudice.

## IV.    INITIAL REVIEW OF TOMAS'S CLAIMS

### A.    Legal Standard for Initial Review

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**B.     Factual Allegations in the Complaint**

In February 2011, the Oneida County Department of Adult Protective Services ("Adult Protective Services") ordered that Margaret be held against her will in a local hospital for four days, during which time, a fraudulent investigation was initiated by Adult Protective Services with the apparent objective of targeting the Zavalidrogas for harassment and dissuading them from pursuing ongoing litigation against other Oneida County Agencies. *Id.* at ¶¶ 13-14. Once Margaret was released, she and Tomas discussed the strong possibility that what had happened to her likely would have required a confederate close to her family working with Adult Protective Services. *Id.* at ¶ 14.

At about the same time, Defendant Carola Seider ("Carola"), wife of Defendant Victor Zavalidroga ("Victor"), informed Tomas that she had begun planning her retirement and was interested in knowing what was being planned regarding Margaret's property given her forced confinement. *Id.* Later, in 2012, Carola became more threatening and demanding and demanded that Margaret give up her pet cats after one had given birth to several kittens. *Id.* at ¶ 15. After being told to leave Margaret's cats alone, Defendants Jon Zavalidroga ("Jon") and Victor took the cats away when Margaret was not home. *Id.* at ¶ 16.

In the early summer of 2012, Jon was arrested after smashing a heavy coffee mug at the window of Margaret's car as she and Tomas were leaving the house. *Id.* at ¶ 17. At the time of his arrest, Jon summoned the State Troopers involved to look at supposed code violations in Margaret's home. *Id.*

After multiple incidents of misbehavior and trashing her property, in August 2010,

Margaret had an attorney serve a cease and desist letter on Carola and Victor asking that they stop violating the property. *Id*. at ¶ 18. In an effort to retaliate, Jon approached Adult Protective Services, specifically Defendant Kristen Palmer ("Palmer") and her partner Chris at about that time. *Id*. at ¶ 19.

In November 2013, Tomas returned to Margaret's home to find a number of State Police cars, Palmer, and a Codes Enforcement Officer and was told an inspection of the house was underway. *Id*. at ¶ 20. According to the Complaint, Palmer later admitted that she and the Zavalidroga Defendants had fabricated the condemnation of Margaret's home, and "[i]n the words of a State social worker: "'The Petitioners (Victor and Jon Zavalidroga) attempted to get the Town of Annsville Codes Enforcer involved, as a way of attempting to get the alleged incapacitated person (Margaret Zavalidroga) away from Tomas. It was Ms. Palmer's office that came in and arranged to have the property condemned.'" *Id*.

Twice in the winter of 2014, State Police Officers came onto Margaret's property without warrants or invitation. *Id*. at ¶ 21. In June 2014, allegedly upon the advice of counsel and at Margaret's request, two parcels of property owned by her were transferred to Tomas in hopes of better management. *Id*. at ¶ 22.

On July 18, 2014, Tomas and Margaret were in Oneida picking up a utility vehicle for the farm, and while Margaret waited in the car, Tomas and an acquaintance went to pick up the vehicle. *Id*. at ¶ 24. Upon returning to the car, Tomas noticed Margaret was gone. *Id*. Three days later, Margaret was found in nearby woodlands by a police search party. *Id*. at ¶ 25. After being questioned by the State Police, Tomas was placed under arrest on charges that he had brought Margaret into the woods and had known where she was. *Id*. at ¶ 26.

Margaret was in a state of undress and was hypothermic when found. *Id*. at ¶ 27. Margaret was tested for dementia and was falsely diagnosed as being severely demented within one week of being found and transferred to an Oneida County nursing facility where Palmer took control of her care and severely limited visitation, allegedly in an effort to disorient Margaret and conceal her true condition. *Id*. at ¶¶ 27- 28.

According to the complaint, Defendants Victor and Jon, along with Palmer, have disclosed their intent to confine Margaret to an institution and gain control of her financial assets. *Id*. at ¶ 29. They also declared their intent to seek nullification of Tomas's power of attorney and to reverse the property transfers made to him by Margaret. *Id*.

Tomas has asserted claims under 42 U.S.C. § 1981 for denial of due process and equal protection under the Fourteenth Amendment and denial of free speech under the First Amendment. *Id*. at ¶ 32. He has asserted claims under 42 U.S.C. §§ 1983 and 1985 for the denial of "certain other rights, privileges and immunities guaranteed to [him] under the Constitution of the United States" by the Defendants who are alleged to have been acting under color of state law. *Id*. at ¶¶ 34-35.

Tomas seeks injunctive relief in the form of the immediate release of Margaret from confinement as well as monetary damages. *Id.* at ¶¶ 3, 35.

**C.** ***Younger* Abstention**

The only claims Tomas can be found to have asserted on his own behalf are those for the Defendants' alleged conspiracy to nullify the power of attorney Margaret had given him and to undo the transfers of Margaret's property to Tomas. (Dkt. No. 1 at ¶¶ 2, 29.) As noted above, Tomas has asserted a conspiracy among Defendants to violate his constitutional rights by those

actions under 42 U.S.C. §§ 1981, 1983, and 1985. *Id*. at ¶¶ 32, 34-35.

Tomas alleges in his Complaint that Defendants engaged in an attempt to commence a fraudulent state court action in an effort to nullify the power of attorney granted him by Margaret and to effect a conversion of the property Margaret had conveyed to him. *Id*. at ¶ 2. Subsequent filings by Tomas reveal that a state court had appointed Girouard as guardian for Margaret and Tomas's power of attorney was no longer in effect.[1] (Dkt. No. 9 at 1.) Tomas sought an order from the District Court prohibiting Defendants and the state courts from unlawfully depriving him of his title to the real property conveyed to him by Margaret. (Dkt. No. 11 at 1.) An Order to Show Cause signed by the Hon. Samuel D. Hester, Supreme Court Justice, County of Oneida, in a state court action entitled *Theresa M. Girouard, as Guardian for IP, Margaret Zavalidroga v. Tomas Zavalidroga, Jon Zavalidroga, and Victor Zavalidroga*, was included with Tomas's Request for a Temporary Restraining Order and Notice for a Preliminary Injunction in this case. (Dkt. No. 11 at 6-8.)

Based upon the foregoing, the Court assumes that a state court proceeding is pending regarding the guardianship of Margaret and control over her affairs and property, including the real property which, according to the state court Order to Show Cause, Tomas had transferred to himself using the power of attorney Margaret had granted him. (Dkt. No. 11 at 6.) Under the

---

[1] It appears from an October 23, 2014, article in the Oneida Daily Dispatch newspaper that the Hon. Samuel Hester, New York State Supreme Court, County of Oneida, stripped Tomas of his power of attorney over Margaret following a two-day hearing held around the time the complaint was filed in this action. According to the article, Judge Hester ruled that neither Jon nor Victor, Defendants herein, would be named guardian over Margaret's affairs, and that the court would appoint an independent guardian. *See* www.oneidadispatch.com/general-news/20141023/zavalidroga-stripped-of-power-of-attorney-status-for-mother (last visited on September 16, 2015). The article is in accord with the information provided by Tomas regarding the state court proceeding.

*Younger* abstention doctrine, federal courts generally must abstain from adjudicating federal claims that "involve or call into question ongoing state court proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)).

The Second Circuit has held that *Younger* abstention is appropriate when: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const.*, 282 F.3d at 198. Tomas has conceded that there is a pending state court guardianship proceeding. State court guardian proceedings have been found to involve important state interests. *See, e.g., Toriola v. North Shore LIJ*, No. 09-CV-3251 (DLI) (LB), 2009 WL 2338037, at * 2, 2009 U.S. Dist. LEXIS 67385 * 5 (E.D.N.Y. July 29, 2009)[2] ("As plaintiff seeks to have this court intervene in a pending state court proceeding in an effort to challenge the guardianship of her mother, this court must abstain" under *Younger*); *Sykes v. Cook County Circuit Court Probate Division*, No. 14 C 7459, 2015 WL 1094889, at * 6, 2015 U.S. Dist. LEXIS 28889, at * 18 (N.D. Ill. March 10, 2015) (finding the ongoing supervision of a guardianship matter to involve important state interests). Moreover, the Second Circuit has "often recognized the obligation and competence of state courts to decide federal constitutional issues." *Donkor v. City of New York Human Resources Admin. Special Services for Children*, 673 F.Supp. 1221, 1226 (S.D.N.Y. 1987).

The Supreme Court has recognized that "bad faith [and] harassment" constitute "narrow"

---

[2] Copies of the unpublished decisions cited herein will be provided to Plaintiffs in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

exceptions to *Younger* abstention.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).  In this case, Tomas concedes that his power of attorney was revoked and an attempt made to transfer the real property to the guardian as a part of a state court guardianship proceedings, and there are no facts suggesting that bad faith or harassment on the part of Defendants were responsible for the actions of the state court or the court appointed guardian.

In light of the foregoing, the Court concludes that the District Court is required to abstain from adjudicating Tomas's federal claims under *Younger*.

### D. Tomas's August 31, 2015 Motion to Appoint Counsel

In light of the Court's recommendation that the District Court abstain from hearing the claims asserted by Tomas in this matter under *Younger*, the Court denies Tomas's August 31, 2015, motion for the appointment of counsel.  (Dkt. No. 21.)

**ACCORDINGLY**, it is hereby

**ORDERED** that the motion for appointment of counsel for Margaret and Tomas Zavalidroga (Dkt. No. 21) is **DENIED** without prejudice; and it is

**RECOMMENDED** that the Complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** for the reasons set forth herein; and it is hereby

**ORDERED**, that the Clerk mail Plaintiffs a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) at the address set forth for Plaintiffs in the docket.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated: September 22, 2015
      Syracuse, New York

                                      Therese Wiley Dancks
                                      United States Magistrate Judge

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Gloria Jean Sykes, Timothy J. Lahrman, and M.G.S.,
Plaintiffs,
v.
Cook County Circuit Court Probate Division, Aicha
M. MacCarthy, Timothy Evans, Carolyn Toerpe, Lisa
Madigan, State of Illinois, and Bruce Rauner, De-
fendants.

No. 14 C 7459
1:14–cv–07459Signed March 10, 2015

Gloria Jean Sykes, Chicago, IL, pro se.

Timothy J. Lahrman, Ekhart, IN, pro se.

Shirley Ruth Calloway, Illinois Attorney General's
Office, Peter J. Schmiedel, Ronald D. Menna, Jr.,
Fischel & Kahn, Ltd., Amy Lynn Anderson, Joshua C.
Bell, Brenner, Monroe, Scott & Anderson, Ltd., Chi-
cago, IL, for Defendants.

### ORDER

John J. Tharp, Jr., United States District Judge
**\*1** For the reasons set forth in the attached
statement below, the Motion to Dismiss by Defend-
ants Timothy Evans, State of Illinois, Lisa Madigan,
Cook County Circuit Court Probate Division, Bruce
Rauner,[FN1] and Aicha [FN2] M. MacCarthy (Dkt. 18), the
Motions to Dismiss by Defendant Carolyn Toerpe
(Dkt. 21, 37), and the Motion to Dismiss by Peter
Schmiedel and Fischel & Kahn LP (Dkt. 33) are
granted. Because this Court lacks subject matter ju-
risdiction to hear this case, Plaintiffs' Motion for

Appointment of Guardian Ad Litem and for Ap-
pointment of Counsel (Dkt. 7), Motion to Disqualify
Counsel (Dkt. 27), Motion to Strike (Dkt. 28), and
Request to Take Judicial Notice (Dkt. 57) are denied
as moot. This case is terminated for lack of subject
matter jurisdiction.

> FN1. Bruce Rauner has replaced Pat Quinn
> as the Governor of Illinois and so has been
> substituted for Mr. Quinn as a defendant in
> this case pursuant to Fed.R.Civ.P. 25(d).

> FN2. The plaintiffs spelled Judge Mac-
> Carthy's first name as "Aicha" in the com-
> plaint and in the briefs, which the state de-
> fendants claim to be an incorrect spelling.
> Contrary to the state defendants' assertions,
> however, public records spell Judge Mac-
> Carthy's first name as "Aicha." *See, e.g.,*
> Cook County Clerk's Office, *November 06,*
> *2012 Presidential General Election Results,*
> http:// re-
> sults1112.cookcountyclerk.com/summary.as
> px?eid=110612 (last visited Mar. 10, 2015);
> *Honorable Aicha Marie MacCarthy, Circuit*
> *Judge,* http://
> www.cookcountycourt.org/JudgesPages/Ma
> cCarthyAichaMarie.aspx (last visited Mar.
> 10, 2015).

### STATEMENT

This law suit duplicates, in large measure, both an
earlier case filed by Plaintiff Gloria Jean Sykes in this
Court, and a more recent petition she filed in the
Probate Division of the Cook County Circuit Court
and which was denied by Circuit Court Judge Aicha
MacCarthy. In the wake of that ruling, Ms. Sykes has
essentially reasserted claims that this Court denied in
2012 and that Judge MacCarthy denied in the fall of
2014. In refiling the case in federal court, however,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**

Ms. Sykes, has added a claim that the Circuit Court Judge violated her rights under the Americans with Disabilities Act by ordering her service dog, "Shaggy," to be removed from the courtroom during a hearing. Even though this Court is quite fond of dogs, and can attest for the record that Shaggy comported himself well when he accompanied the plaintiff to a status hearing in this case, the Circuit Court's order barring Shaggy's appearance does not vest this Court with jurisdiction over what evidently remains a contentious dispute between sisters concerning (at least ostensibly) their mother's welfare.

Plaintiffs Gloria Jean Sykes and Timothy Lahrman brought this action on behalf of Ms. Sykes's mother, M.G.S., alleging that during proceedings before the Cook County Circuit Court Probate Division, the defendants have engaged in discriminatory practices in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The complaint also alleges that Cook County Circuit Court Chief Judge Evans is responsible for the Cook County Circuit Court's compliance with the ADA, and is therefore also responsible for the injuries to the plaintiffs and to M.G.S. The complaint includes the allegations that were the subject of Ms. Sykes state court "Motion for Accommodation," which asserted that the State of Illinois, through its Office of Attorney General, "excludes" and "systematically discriminates against and disparages those who are or who may be disabled" in its adult guardianship services, programs, and activities. Compl., Dkt. 1, at ¶¶ 49, 77. The plaintiffs also purport to state claims on behalf of themselves. Ms. Sykes alleges that she is "a qualified individual with a disability who is substantially limited in life activities by PTSD and is routinely accompanied in public facilities and palces of public accommodation with an ADA working/service dog ("Shaggy")." Id. ¶ 22. The complaint alleges that Mr. Lahrman is also "disabled," though the nature of his disability is not identified. Defendants Timothy Evans, State of Illinois, Lisa Madigan, Cook County Circuit Court Probate Division, Bruce Rauner, Aicha

M. MacCarthy (collectively, the "state defendants") and Defendant Carolyn Toerpe, M.G.S.'s plenary guardian (and also her daughter; Ms. Sykes is Ms. Toerpe's sister),[FN3] moved to dismiss this case for lack of jurisdiction.[FN4]

> FN3. Carolyn Toerpe, who was appointed as M.G.S.'s plenary guardian in the state court proceedings, is also M.G.S.'s daughter. *See* Toerpe Mem., Dkt. 22, at 3 (describing Toerpe as "the duly appointed guardian for her ... mother"); Motion to Move [M.G.S.] Home, Dkt. 39–1, at 11 nn.2 & 3 (referring to Carolyn as M.G.S.'s daughter); Order, Dkt. 40–1, at 1–2 (identifying Carolyn Toerpe as "Carolyn Sykes–Toerpe").

> FN4. The plaintiffs assert in their response brief that the defendants' motions should be denied because they are in default for having failed to timely respond to the complaint. Resp., Dkt. 52, at 1–2. The plaintiffs did not seek entry of an order of default, or file a motion for default judgment, however, so they forfeited any objection to the timeliness of the defendants' responses to the complaint. In any event, the Court would not enter a default judgment for the plaintiffs in a matter in which it concludes that it has no jurisdiction over the claims asserted.

**\*2** Other than Shaggy's presence, this case is substantially similar to the earlier case filed by Sykes in this Court, *M.G.S. ex rel. Sykes v. Toerpe,* No. 11 C 7934 ("*Sykes I* "). In that case, just as in this one, Sykes and and other self-styled "next friends" sought to advance claims on behalf of M.G.S. Particularly relevant to this case, the *Sykes I* complaint alleged, among other things, that the defendants were violating the ADA by denying M.G.S. the "meaningful and equal access to the courts and [public] services" and the "occupancy of a residence of her choosing" on account of her disabilities, and employed policies and

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**

procedures that violate adult wards' due process rights. Compl., *Sykes I,* No. 11 C 7934, Dkt. 1, at ¶¶ 26–29, 34–35.

In *Sykes I,* this Court dismissed the case for lack of subject matter jurisdiction on two independently sufficient bases: the *Rooker–Feldman* doctrine and the probate exception to federal jurisdiction. *See Sykes I,* 2012 WL 3235240, at *2–3 (N.D.Ill. Aug. 6, 2012). This Court applied the *Rooker–Feldman* doctrine, which precludes lower federal courts from reviewing state court judgments, and found that it lacked the jurisdiction to review "the validity of adjudication of M.G.S. as legally disabled, the appointment of Ms. Toerpe as her guardian, and Ms. Toerpe's ongoing management of M.G.S.'s affairs under the authority granted by the probate court." *Id.* at *2 (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir.2012); *Taylor v. Fed. Nat'l Mortg. Ass'n,* 374 F.3d 529, 533 (7th Cir.2004)). Under the *Rooker–Feldman* doctrine, courts lack jurisdiction to hear even independent claims that are "inextricably intertwined, *i.e.,* that it indirectly seeks to set aside a state court judgment." *Taylor,* 374 F.3d at 533. Applying this test, this Court held that any claims or prayers for relief brought on behalf of M.G.S. were "inextricably intertwined" with the state court probate judgment establishing M.G.S.'s guardianship, and that *Rooker–Feldman* precluded adjudication of those claims. *Sykes I,* 2012 WL 3235240 at *3 (quoting *Taylor,* 374 F.3d at 533). Further, because Sykes was challenging Toerpe's guardianship over M.G.S. and other probate matters, the Court determined that the probate exception precluded this Court from "elbow [ing] its way" into a contested guardianship case "over which the state court is exercising control." *Id.* (citing *Struck v. Cook County Public Guardian,* 508 F.3d 858, 859–60 (7th Cir.2007)). The Court concluded that Sykes' claims "must be pursued in state court" and dismissed the case. *Id.* at *4. The Seventh Circuit affirmed the dismissal, agreeing that "[t]he allegations in this case are

serious, but they belong in state court." *M.G.S. ex rel Sykes v. Toerpe* ("*Sykes II* "), No. 12–3373, Dkt. 19 (7th Cir. Jan. 9, 2013).

In August of 2014, Ms. Sykes again sought to assert claims that the state was violating M.G.S.'s rights under the ADA and that Ms. Toerpe was not adequately protecting M.G.S.'s rights. Heeding the rulings in *Sykes I* and *Sykes II,* however, Ms. Sykes brought her claims in the Probate Division of the Circuit Court of Cook County, filing a "Motion for Reasonable Accommodation." Dkt. 1–A. In that motion, Sykes raised essentially the same ADA claims as the ones asserted in the federal case, alleging that "the Probate Division and its appointed agent guardian" (*i.e.,* Ms. Toerpe) the defendants had discriminated against M.G.S. on account of her disability and had failed to provide reasonable accommodations for M.G.S.'s disability. *Id.* at 2–5. The relief Sykes sought included: (i) transfer of the case from the Probate Division; (ii) appointment of legal counsel for M.G.S.; and (iii) "an appropriate order ensuring to [M.G.S.] her right to receive, un-impeded and un-impaired, the emotional support and informed perspective of Gloria."

**\*3** The court held a hearing on Sykes' motion on September 4, 2014. Sykes attended the hearing with Shaggy, her service dog. Compl., Dkt. 1, at ¶ 37. At the start of the hearing, Judge MacCarthy immediately inquired into the qualifying criteria of Shaggy. *Id.* at ¶ 38. Unsatisfied with Sykes' response, Judge MacCarthy then ordered Sykes and Shaggy out of her courtroom and entered an order forbidding Sykes from returning to the court with Shaggy without leave of the court. Order, Dkt. 1–D, at 1. The order did not address the merits of Sykes' motion, but struck the motion without prejudice. *Id.*

After Judge MacCarthy dismissed her motion, Sykes did not (so far as the record reflects) appeal or seek any further remedies in state court. Instead, she returned to federal court to file this action. Here, she

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**

has reasserted the claims she set forth in her state court Motion for Accommodation, *see* Compl., Dkt. 1, at ¶ 17–20, which targeted the actions of Ms. Toerpe and the Probate Division. She has added claims against Judge MacCarthy for her actions with respect to Ms. Syke's Motion for Accommodation and her exclusion of Shaggy from her courtroom. Ms. Sykes also tacked on claims against Chief Judge Evans for failing to adequately supervise and control the Probate Division and Judge MacCarthy, and against the State of Illinois, its Governor, and its Attorney General, for failing to prevent the alleged abuses by the state court "in the adult-guardianship matter of M.G.S." *Id.* at ¶ 77.

As in *Sykes I,* the *Rooker–Feldman* doctrine applies here and precludes the Court from adjudicating Ms. Sykes claims on behalf of M.G.S. Sykes and Lahrman are neither M.G.S.'s appointed guardians nor her attorneys (they are not attorneys, period [FN5]), and—as explained in the Court's opinion dismissing *Sykes I* —adjudicating the claims in the complaint would require this court to ask whether Sykes and any other putative "next friends" are authorized by Federal Rules of Civil Procedure to bring any claims on M.G.S.'s behalf. *See* Fed.R.Civ.P. 17. Applying Rule 17 would require asking whether M.G.S. "already is represented by someone who is considered appropriate under the law of the forum state"—in this case, Illinois. *T.W. ex rel Enk v. Brophy,* 124 F.3d 893, 896 (7th Cir.1997) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1570 (2d ed.1990)); *see also* Fed.R.Civ.P. 17(b)(1) (capacity to sue or be sued for an individual is determined "by the law of the individual's domicile"). Answering this question would inevitably require reviewing the state court judgments that found M.G.S. legally disabled and that appointed Toerpe as her plenary guardian—a power this Court simply does not have. As state court judgments, they cannot be reviewed by inferior federal courts (such as this Court). *See Rooker,* 263 U.S. at 415–16 (holding that federal courts other than the Supreme Court could not entertain any proceedings to reverse a state court's

errors); *Feldman,* 460 U.S. at 486–87 (holding that federal district courts lack jurisdiction to hear allegations that are "inextricably intertwined" with the judgment of a state [FN6] court); *Taylor,* 374 F.3d at 533 (holding that federal district courts cannot even indirectly "set aside a state court judgment"). And answering this question in the manner that Sykes would like—that is, finding that Sykes, rather than Toerpe, should be permitted to assert claims on behalf of M.G.S.—would effectively overrule the state court's judgment appointing Ms. Toerpe as her mother's guardian. *Rooker–Feldman* bars such review of state court judgments by federal trial courts.

> FN5. Even if Sykes or Lahrman were attorneys, this would not appreciably change the analysis in this case. The Court would still have to determine whether the retained attorney actually has an attorney-client relationship with the disabled person, which would still be inextricably intertwined with the state court judgment finding her to be legally disabled and appointing Toerpe as her guardian.

> FN6. Technically, the prior court judgment at issue in *Feldman* was one of a court of the District of Columbia, and not a state, but the reasoning of the *Feldman* opinion applies to state courts as well. *See, e.g., Taylor,* 374 F.3d at 533 (applying *Rooker–Feldman* in Illinois); *T.W.,* 124 F.3d at 896 (applying *Rooker–Feldman* in Wisconsin).

**\*4** In affirming this Court's ruling in *Sykes I,* the Seventh Circuit agreed that the *Rooker–Feldman* doctrine bars Sykes' attempt to litigate ADA (and other) claims on behalf of her mother in lieu of the court-appointed guardian. *Sykes II,* slip op. at 2 ("As the district court noted, this case is governed by our decision in *Struck*."). Sykes does not address the Court's prior ruling, though she does argue that *Rooker–Feldman* does not bar her claims because

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**

there is no final judgment in the state probate proceeding and because she does not characterize this case as challenging the state court judgment. Pl.'s Resp., Dkt. 52, at 4. Sykes' first argument, that the state court order was not final, is unavailing both because it misapprehends the order that gives rise to the application of the doctrine (it is the order appointing Toerpe as guardian, not Judge MacCarthy's denial of her Motion for Accommodation) and because in any event *Rooker–Feldman* can apply to interlocutory as well as final orders. *Schmitt v. Schmitt,* 324 F.3d 484, 487 (7th Cir.2003). Sykes' second argument, that she does not challenge any state court judgments, is a conclusion of law regarding whether her instant claims are "inextricably intertwined" with the state court guardianship order. As discussed, asking who may properly litigate claims on M.G.S.'s behalf is a question inextricably intertwined with the state court orders appointing Toerpe as M.G.S.'s plenary guardian.

Moreover, even if there were no state court judgment already in place, this Court, as a federal court, would still lack jurisdiction to decide questions of domestic relations under the probate exception. Federal courts have no power to decide probate matters, such as the contested guardianship or custody issues that arise in a Rule 17 analysis. *See Struck,* 508 F.3d at 859–60 (holding that the probate exception to federal jurisdiction applies to adult children challenging state court custody decisions relating to a legally disabled parent); *T.W.,* 124 F.3d at 897 (requiring the "would-be next friend who is not the [disabled] plaintiff's general representative to seek appointment in state court as a guardian ad litem in the federal suit"). This analysis applies to all claims on behalf of M.G.S.—whether the claims relate to the probate proceedings or not or whether the claims arose before or after the probate court's appointment of special or general guardians. For these reasons, this Court lacks the power to hear any claims brought on M.G.S.'s behalf by anyone other than her state-court-appointed guardians. Neither Sykes nor

Lahrman are M.G.S.'s guardians, so they may not assert claims in this Court on behalf of M.G.S., without first being appointed as guardians ad litem *by an Illinois state court*. All claims asserted on behalf of M.G.S., then, must therefore be dismissed for lack of subject matter jurisdiction. Counts I, II–B, III, and IV are dismissed for this reason.[FN7]

> FN7. Sykes and Lahrman have filed a "supplemental complaint" purporting to add a claim for a violation of the Fair Housing Act, 42 U.S.C. § 3617, against Toerpe and her attorneys without first seeking leave of the Court, as required by Fed.R.Civ.P. 15(d). The "supplemental complaint" is therefore inoperative. Even if the Court had permitted its filing, however, the new theory would not cure the jurisdictional problems of the filed complaint, because it is premised on the same core allegation that Toerpe is not properly fulfilling her role as M.G.S.'s guardian and that Sykes should be permitted to assert claims on her behalf.

Therefore, the Court has jurisdiction here only to the extent that Sykes and Lahrman have asserted any claims in which they *personally* suffered an "injury in fact" in the form of "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Such an injury must be "particularized" to the plaintiff and may not be "conjectural or hypothetical." *Id.* (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983); *Sierra Club v. Morton,* 405 U.S. 727, 740–41 (1972)). In this case, the injuries alleged are violations of statutory rights under the ADA. *See* Compl., Dkt. 1, at ¶¶ 49, 55–58, 61–65, 70–71, 76–79. Thus, in order to survive a motion to dismiss, the complaint must allege that either Sykes or Lahrman were "excluded from participation or denied the benefits of the services, programs, or activities" of a public entity because of their own disabilities. 42 U.S.C. § 12132.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**

**\*5** After reviewing the complaint, the Court must dismiss claims asserted by Mr. Lahrman, who has not alleged any injury. Indeed, the complaint concedes that Mr. Lahrman has not suffered any injury. *See* Compl., Dkt. 1, at ¶ 84 n.7 ("With regard to the Plaintiff Lahrman, thus far and as present he has not yet come within or been directly subjected to the authorities and jurisdictions of the Defendant public entities.").[FN8] Lahrman, an Indiana resident, has previously visited the Circuit Court on several occasions without suffering any discrimination from the defendants. Lahrman gives no indication of when or if he will return to the Circuit Court, or how the court might begin to discriminate against him in the future. This is insufficient to state an imminent injury against Lahrman at all, because standing requires more than just a mere intent to "some day" return to the place where the injury will occur and must allege "concrete plans" describing when the injury will occur. *Lujan,* 504 U.S. at 564.

> FN8. In fact, Lahrman, an Indiana resident, has not even outlined "concrete plans" to return to Illinois, much less concrete plans to attend hearings in the Circuit Court of Cook County. *See Lujan,* 504 U.S. at 564.

Which brings us back to Shaggy. Count II–A alleges that Judge MacCarthy and the Cook County Circuit Court improperly discriminated against Sykes because of her disabilities, and retaliated against her for asserting ADA claims on behalf of M.G.S., by barring Shaggy from the courtroom after demanding that Sykes supply proof of both her disabilities and Shaggy's bona fides as a service dog. The cold reception the Circuit Judge allegedly provided to Shaggy does not vest this Court with jurisdiction to hear what remain probate claims. The Circuit Judge's order that Sykes could not remain in the courtroom with Shaggy was entered as part of a probate proceeding and so is inextricably intertwined with that proceeding. Indeed, Sykes maintains that the Probate Court's ruling dismissing her state court petition was issued to retaliate

against her for bringing additional claims on behalf of her mother. Compl., Dkt. 1, at ¶ 54 (alleging exclusion "because of her association with M.G.S."); ¶ 57 (alleging retaliation "on account of ... opposition to acts made unlawful by the ADA and her efforts to aid and encourage her mother ... with attaining and enjoying fully those of her rights provided in" the ADA). As discussed above, this Court lacks the power to review state court orders under the *Rooker–Feldman* doctrine and the probate exception to federal jurisdiction. Sykes' accommodation claim, in essence, seeks to overturn a state court decision dismissing her petition asserting ADA rights on behalf of M.G.S. and an interlocutory order issued in that proceeding. *See Rooker,* 263 U.S. at 415–16; *Feldman,* 460 U.S. at 486–87; *see also Schmitt,* 324 F.3d at 487 (applying *Rooker–Feldman* doctrine to interlocutory order in divorce proceeding.). And again, the probate exception to federal jurisdiction also precludes adjudication of Shaggy's ouster from Judge MacCarthy's courtroom. And if either of these doctrines did not preclude the exercise of jurisdiction by this Court to review Judge MacCarthy's order excluding Shaggy, the abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37 (1971), would. That doctrine holds that federal courts "must abstain from enjoining or otherwise interfering in ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise the federal claims, as long as (4) no exceptional circumstances exist that would make abstention inappropriate." *Strohman Realty, Inc. v. Martinez,* 505 F.3d 658, 662 (7th Cir.2007). This is a judicial matter involving important state interests (the ongoing supervision of a guardianship matter) and the state court is competent to decide issues of federal law; abstention would be appropriate even if the Court had jurisdiction. To the extent that Sykes is aggrieved by the Probate Court's orders, she must seek redress through the state court system before turning to a federal court.

**\*6** Accordingly, the Court dismisses the complaint for lack of subject matter jurisdiction. The

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)
**(Cite as: 2015 WL 1094889 (N.D.Ill.))**

dismissal is without prejudice, in that it does not bar the plaintiffs from asserting their claims in any other forum. It is with prejudice, however, with respect to reasserting these claims in federal court. Further, the Court notes that the plaintiffs have provided no rationale for reasserting ADA claims on behalf of M.G.S. in this Court after the Court's dismissal of the claims in *Sykes I* and the affirmance of that dismissal in *Sykes II* ; they appear to have simply ignored the bases of the prior decisions and judgment with respect to those claims. Further attempt to reassert the claims in this Court will prompt the Court to consider imposition of sanctions.

N.D.Ill., 2015
Sykes v. Cook County Circuit Court Probate Division
Not Reported in F.Supp.3d, 2015 WL 1094889 (N.D.Ill.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2009 WL 2338037 (E.D.N.Y.)
**(Cite as: 2009 WL 2338037 (E.D.N.Y.))**

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Rosemary Chinye Okolie TORIOLA, Plaintiff, pro se,
v.
NORTH SHORE LIJ, Geralyn Randazzo, Ted Lei-
hman, Khyzar Chaudhry, Self Help Services,
BRC–Hope Health Home, Cyril Chie Okolie and John
Doe/Jane Doe, Defendants.

No. 09–CV–3251 (DLI)(LB).
July 29, 2009.

Rosemary Chinye Okolie Toriola, Corona, NY, pro se.

### MEMORANDUM AND ORDER

DORA L. IRIZARRY, District Judge.

**\*1** Plaintiff Rosemary Chinye Okolie Toriola
("Plaintiff") brings this *pro se* action, along with an
order to show cause [FN1] seeking to "vacate the order of
the Honorable Charles Thomas" ... "or in the alterna-
tive, to order Lower court to recognize the letter of
interest by the Consulate General of Nigeria." The
court grants plaintiff's request to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915 solely for the
purpose of this Order. The complaint is dismissed and
the order to show cause is denied as set forth below.

> FN1. The proposed order to show cause lacks
> a supporting affidavit or any pertinent
> statements or information relevant to a re-
> quest for immediate preliminary relief.

### Background

The complaint consists of two pages and several
exhibits. Plaintiff alleges that on July 27, 2009, Mr.
Okon from Self Help Services appeared at her home
with a court order to see her 87–year old mother,
Theresa Ogoli Okolie ("Ms.Okolie"). (Compl., Ex. B,
"Explanation (What Happened)"). Plaintiff further
alleges that defendant Cyril Okolie placed Ms. Okolie
in a wheelchair and removed her from plaintiff's home
while "the police and ambulance people just stood
around and watched." *Id.* Plaintiff alleges that she is
the guardian of her mother and has power of attorney
over her affairs. Plaintiff further alleges that she has
been banned from seeing her mother and that she does
not know where her mother was taken after she was
transported to North Shore Long Island Jewish Hos-
pital by ambulance. The exhibits do not reveal much
more except to indicate that there is significant fa-
milial strife and that proceedings have taken place in
state court. Specifically, plaintiff seeks to vacate an
order of the Honorable Charles Thomas pursuant to
several federal procedural rules. Plaintiff does not
provide any further information concerning the state
court action.

### Discussion

A. Standard of Review

In reviewing the complaint, the court is mindful
that plaintiff is proceeding *pro se* and that "a *pro se*
complaint, however inartfully pleaded, must be held to
less stringent standards than formal pleadings drafted
by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94,
127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citation
omitted); *Sealed Plaintiff v. Sealed Defendant,* 537
F.3d 185, 191 (2d Cir.2008). However, pursuant to
the *in forma pauperis* statute, the court must dismiss a
complaint if it determines that the action "(i) is friv-
olous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief."
A claim is "frivolous" if its "factual contentions are
clearly baseless, such as when allegations are the
product of delusion or fantasy;" or if it is "based on an

Not Reported in F.Supp.2d, 2009 WL 2338037 (E.D.N.Y.)
**(Cite as: 2009 WL 2338037 (E.D.N.Y.))**

indisputably merit less legal theory"—that is, when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal citation omitted).

A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject-matter jurisdiction over the action. *Rene v. Citibank NA,* 32 F.Supp.2d 539, 541–42 (E.D.N.Y.1999). Finally, a party seeking a temporary restraining order must establish irreparable harm and either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidely toward the party requesting the preliminary relief. *See 1–800 Contacts, Inc. v. WhenU.Com, Inc.,* 414 F.3d 400, 406 (2d Cir.2005) (citations omitted).

B. *Younger* Abstention

**\*2** Plaintiff invokes the court's federal question jurisdiction by alluding to federal constitutional violations.[FN2] (*See* Proposed Order to Show Cause at p. 2.) As plaintiff seeks to vacate an order issued by the Honorable Charles Thomas, a judge of the New York State Supreme Court, Queens County, this court assumes that a state court proceeding is pending concerning the guardianship of plaintiff's mother. Under the *Younger* abstention doctrine, federal courts generally must abstain from adjudicating federal claims that "involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) (citing *Younger v. Harris,* 401 U.S. 37, 43–44 (1971)).

FN2. It is unclear whether plaintiff is asserting her own claims or seeks to file on behalf of her mother. Plaintiff may litigate her own claims, but to the extent plaintiff seeks to bring claims on behalf of her mother, she is barred from doing so as she has not alleged that she is an attorney licensed to

practice law. Pursuant to 28 U.S.C. § 1654, "parties may plead and conduct their own cases personally or by counsel." Therefore, a non-attorney cannot represent or appear on behalf of another person in federal court. *See Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 132–33 (2d Cir.2009) (citing *Iannacone v. Law,* 142 F.3d 553, 558 (2d Cir.1998)).

The Second Circuit has held that *Younger* abstention is appropriate when: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims ." *Diamond "D" Const. Corp,* 282 F.3d at 198. Here, plaintiff admits that "Judge Charles Thomas gave the hospital temporary guardianship over my mother for medical and mental evaluation." (Compl., Ex. C, "Toriola's Undated Letter to Consulate General.") As plaintiff seeks to have this court intervene in a pending state court proceeding in an effort to challenge the guardianship of her mother, this court must abstain. In any event, this court would not be able to vacate a decision entered by a judge of another court or otherwise intervene in any state court proceedings as this court does not have appellate review over the state courts.

C. No Jurisdiction Over Guardianship Proceedings

Even if there were no ongoing state court proceedings preventing this court from adjudicating this action and remedy being sought were appropriate, the court would lack subject-matter jurisdiction over this complaint. "[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived," *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), and federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2338037 (E.D.N.Y.)
**(Cite as: 2009 WL 2338037 (E.D.N.Y.))**

119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see also Wynn v. AC Rochester,* 273 F.3d 153, 157 (2d Cir.2001); Fed.R.Civ.P. 12(h)(3). Despite plaintiff's conclusory references to the federal constitution, the complaint concerns a matter of state law. To the extent this action is related to Ms. Okolie's guardianship proceedings, this court does not have jurisdiction over this action. *See, e.g., Verdejo v. North Shore Associates,* No. 08–CV–1950, 2009 WL 1137748, at *1 (E.D.N.Y. Apr.27, 2009) ("[T]his Court has no power to reverse [the state court's] guardianship order. If plaintiff is correct that the guardian was improperly appointed under state law, his remedy is [in the state court's appellate procedures]."); *Abreu v. State of New York,* No. 02–CV–1618, slip op. at 3 (E.D.N.Y.2002) ("[A]ppointment of a guardian and the enforcement of the provisions of the guardianship order are state court matters."); *see also United States v. Sanders,* 314 F.3d 236, 240 (6th Cir.2002) ("Guardianships, and the duties and powers of guardians, are traditionally matters of state law."). Plaintiff is advised to pursue her remedies in state court, including any appellate review that may be available to her, or by filing an application for a writ of habeas corpus on behalf of her mother in the appropriate state court.

### Conclusion

**\*3** Accordingly, the complaint filed *in forma pauperis,* is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim or in the alternative for lack of subject-matter jurisdiction, Fed.R.Civ.P. 12(h)(3) The order to show cause for a temporary restraining order is denied. The state law claims are dismissed without prejudice. The clerk of Court is directed to close this case. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

E.D.N.Y.,2009.
Toriola v. North Shore LIJ
Not Reported in F.Supp.2d, 2009 WL 2338037 (E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.